IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ROOSEVELT FINLEY, NATHAN WHITE, and DAVID GALLEW, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACT. NO.  3:15cv195-CSC (WO) |
| THE TOWN OF CAMP HILL, ALABAMA, a municipal corporation, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

**I.  INTRODUCTION**

In this 42 U.S.C. § 1983 action, the plaintiffs, Roosevelt Finley ("Finley"), Nathan White ("White"), and David Gallew ("Gallew"), allege a state law claim of wrongful termination against the Town of Camp Hill, Alabama ("Defendant" or "Town of Camp Hill").  In addition, the plaintiffs contend that their federal due process rights were violated.

This case was originally filed in the Circuit Court of Tallapoosa County, Alabama. The Town of Camp Hill timely removed the action to this court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.   The court granted in part and denied in part the defendant's motion to dismiss.  *See* Doc. # 22.  Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to a United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.

This matter is now pending before the court on defendants' motion for summary judgment (doc. # 31) and the plaintiffs' motion for partial summary judgment (doc. # 34). The court has carefully reviewed the motions for summary judgment, the briefs filed in support of and in opposition to the motions, and the supporting evidentiary materials and concludes that the plaintiffs' motion for partial summary judgment is due to be DENIED as to count three,[1] the defendant's motion is due to be GRANTED as to the federal due process claims, and that the state law claims are due to be REMANDED to the state court.

## II.  THE STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute][2] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation omitted); FED.R.CIV.P. 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine [dispute] as to any material fact and that the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and

---

[1]  Because the state law claims contained in court two of the complaint are due to be remanded to the Circuit Court of Tallapoosa County, Alabama, the court declines to resolve that aspect of the plaintiffs' motion for partial summary judgment.

[2]  Effective December 1, 2010, the language of Rule 56(a) was amended.  The word "dispute" replaced the word "issue" to "better reflect[] the focus of a summary-judgment determination." FED.R.CIV.P. 56(a), Advisory Committee Notes, 2010 Amendments.

2

identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof.  *Id.* at 322-324.

Once the moving party meets its evidentiary burden and demonstrates the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; FED.R.CIV.P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion.").  A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in his favor.  *Greenberg*, 498 F.3d at 1263.

To survive a properly supported motion for summary judgment, the non-moving is required to produce "sufficient [favorable] evidence" establishing a violation of his constitutional rights.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly

probative . . . summary judgment may be granted." *Id*. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990) *quoting Anderson*, *supra*.  Hence, when a party fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the party will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City*

*of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co, Ltd., v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact).

## III. FACTS

Plaintiff Roosevelt Finley was hired by the Town of Camp Hill as its Chief of Police in 2004, and served in that capacity until his termination on October 20, 2014.[3]  (Doc. # 33, Ex. A at 15, 17, Finley Dep. p. 26, 28).[4]  Plaintiff Nathan White was hired by the Town of Camp Hill as a patrol officer in 2011.  (Doc. # 33, Ex. D at 7, White Dep. p. 23).  He was subsequently promoted to assist chief/lieutenant.  (*Id.* at 5, Dep. p. 13).  He maintained this

---

[3]  Finley had previously been employed by the Town of Camp Hill as a patrol officer and sergeant.

[4]  Because the parties electronically filed excerpts of depositions, for the sake of clarity, the court cites to the court's case management electronic court filing (CMECF) page number as well as the individual deposition page number.

position until his termination on October 20, 2014.  Plaintiff David Gallew was hired as a part-time investigator by the Town of Camp Hill in 2011.  He worked 24 hours per week on Saturdays and Sundays.  As a part-time employee, Gallew did not receive any benefits from the Town.  He was summarily terminated by Danny Evans, the Mayor of the Town of Camp Hill on October 20, 2014.

On October 7, 2014, Finley and White met separately with Mayor Evans and City Councilman Anthony Pogue.  (Doc. # 36, Ex. 7 at 3, Finley Dep. p. 52).  At that time, Evans informed Finley that he was being placed on administrative leave "for not following protocol, which was wearing the uniform, and not going 1041 and 1042,[5] and giving White, Officer White, giving some officers time that they didn't work."  (Doc. # 33, Ex. H at 13, Pogue Dep. p. 98) (footnote added).  Finley does not dispute Pogue's description of the meeting.  (Doc. # 33, Ex. A at 22-23, Finley Dep. p. 54-55).

At the meeting with White, Evans placed White on administrative leave "for not following protocol.  The same thing for 1041, and [Evans] told [White] for accepting time . . ."  (*Id*., Ex. H at 14, Pogue Dep. p. 98).[6]

---

[5]  It is undisputed that to go 10-41 and 10-42 means officers are to call the Tallapoosa County Sheriff's dispatch at the beginning of the officer's shift and at the conclusion of the shift.  (Doc. # 33, Ex. A at 18-19, Finley Dep. p. 31-32).

[6]  White denies that he was told verbally what the charges against him were at the October 7, 2014 meeting.

> A:    He [Pogue] stated in his testimony that we were told at the time verbally what the charges were, and we were not.  I was very specific about that.
>
> When they handed me the letter, I read it in front of them, and it

At the conclusion of each of their meetings with Evans and Pogue, Finley and White received written notice that they were being placed on administrative leave, effective immediately.  (Doc. # 33, Ex. D at 11, White Dep. p. 48).  Finley's notice stated that the reason for the immediate action was that he had failed to follow protocol and that there was

---

        didn't say – mine didn't even say payroll discrepancies.  Mine just said not following protocol.  And I asked them specifically what protocol am I not following.  And they said it says right there, protocol.

              And I said, no, that's not good enough.  You have to list out protocol.  If I'm not following section 1.234, you have to say for violating section 1.234 in the letter letting me know that.

              And at that point, the mayor got mad and said if I have to tell you what I'm going to – what you are being investigated for I might as well fire you now.

              And I said that's lovely if you think you can, but you actually still have to give me a letter at that point for being terminated and for violating section 1.234.

              And at that point, Pogue popped in and said, well, who says that?  And I said the code does, 11-43-230.

Q:     Did the mayor or Pogue go into detail? Now, he says he did.

A:     They did not.  He said call our attorney.  Have your attorney call our attorney then.  I said fine.  And I left.

(Doc. # 36, Ex. 7 at 25-26, White Dep. p. 45-46).

       This dispute, however, does not preclude summary judgment on the federal claims for several reasons. First, it is undisputed that the October 7, 2014 meeting between Mayor Evans and the plaintiffs was not a due process hearing, that the officers were placed on administrative leave and they were not terminated from their employment at that time.

       Second, and more importantly, as will be explained, even if White was not given adequate notice of the charges against him at the pre-termination hearing on October 20, 2014, any defective notice was cured by the full evidentiary post-termination hearing on November 6, 2014.  It is undisputed that prior to that hearing, White was fully apprised of the charges against him.  Finally, White has an adequate state remedy which defeats his federal due process claims.

a discrepancy with payroll and an investigation was ongoing. White's notice stated that the reason for the immediate action was that he had failed to follow protocol. (Doc. # 33, Ex. D at 11, Dep. p. 48).

Both Finley and White were advised that they had ten (10) days to request a hearing; both plaintiffs did request a hearing. Finley and White retained attorneys to represent them at the pre-termination hearing. (Doc. # 33, Ex. A at 25, Finley Dep. p. 57; Ex. D at 10, White Dep. p. 47).

A pre-termination hearing was held before the Town of Camp Hill City Council on October 20, 2014. Finley and White appeared at the hearing and were represented by counsel. (Doc. # 33, Ex. A at 25, Finley Dep. at 57). David Gallew was also present at the request of Finley. Prior to going into executive session, Gallew was recording the proceedings on his cell phone and on an MP3 recording device. When the Town Council went into executive session, Gallew left the hearing room. However, he quickly discovered that he had left his MP3 recording device in the executive session. He sent a text message to Finley asking him to retrieve his device.

The Town Council went into executive session for the pre-termination hearings at 6:15 p.m. (Doc. # 36, Ex. E at 28). In the hearing, the Mayor spoke and detailed the accusations against Finley and White." Evans accused Finley of paying officers for time they did not work. He also accused Finley of not calling in at the beginning and end of his shifts - going "1041 and 1042." Finally, Evans accused Finley of not wearing a uniform. (Doc. #

33, Ex. A at 28, Finley Dep. at 62).  Finley was allowed to speak as was his attorney. (Doc.

# 33, Ex. A at 26, Finley Dep. at 58).  In response to the allegation that he had improperly

paid several officers, Finley brought documents to the hearing.  (Doc. # 33, Ex. A at 27,

Finley Dep. at 59).

At the conclusion of the hearings, at 8:02 p.m., the regular Town Council meeting

resumed and Mayor Evans recommended to the Council that Finley and White be terminated

"for the reasons given."  (Doc. # 36, Ex. E at 28). Councilman Pogue made the motion to

terminate them; Councilman Hatcher seconded the motion; and the Council voted 5-0 in

favor of termination.  (*Id*.)

At the conclusion of the Council meeting, Gallew approached the City Attorney and

requested the return of his recording device.  (Doc. # 33, Ex. G at 46, Hr'g Tr. p. 45).  The

city attorney informed Gallew that Evans had the recording device so Gallew approached

Evans.  (*Id*.)  The mayor refused to return the recording device.

> When I – when I first approached the mayor, I asked him if I could have my
> recorder back.  He said no.  I then tried to explain what had happened. I tried
> to explain that, you know, it must have fallen out of my pocket.  I had no
> intention of leaving it, you know.  And he said, no, you're not getting it back.

(Doc. # 33, Ex. G at 47-48, Hr'g Tr. p. 46-47).

Evans then told Gallew that the device was found in record mode and had been

recording the executive session.  (Doc. # 33, Ex. G at 48, Hr'g Tr. p. 47).  Gallew told the

mayor to erase the recording and again requested the return of the device.  (*Id*.)  When the

mayor refused, Gallew threatened to arrest him for theft of property.  (*Id*.)  It is undisputed

9

that when Gallew pulled out his handcuffs to effectuate an arrest, Evans summarily fired him.

Q:     Okay. Did you at any time threaten to arrest the mayor?

A:     Yes, ma'am.  I advised him that if he failed to return that device to me that that can constitute a theft of property third.  And that he could – he could be arrested for theft of property third.

Q:     Did he deny having stolen property?

A:     No, ma'am.

Q:     So what did you do then?

A:     I pulled out my handcuffs. . . . At one point Danny had said as soon as he saw me with my handcuffs, he said  . . .

Q:     Was this occurring when you got the handcuffs out?

A:     Yes, ma'am.

Q:     Okay.

A:     At one point the mayor had said, are you pulling your handcuffs on me? You're fired and terminated me on the spot.

Q:     Okay.  So were you fired after you pulled out the handcuffs?

A:     Yes, ma'am.

(Doc. # 33, Ex. F at 23-24, Gallew Dep. p. 44-45).

Mayor Evans sent a letter dated October 23, 2014, to Finley and White, stating that "[a]s a result of the pre-disciplinary hearing held on Monday, October 20, 2014, it was determined that you be terminated."  (Doc. # 36, Ex. F at 30 and Ex. G at 32).  Finley's letter provided a list of charges which included submitting payroll for officers who had not worked

10

the hours indicated, failing to wear Class "A" uniforms, and failing to "go 1041 and 1042 after being given a direct order to do so." (Doc. # 36, Ex. F at 30-31). White's letter provided a list of charges that included accepting pay for hours he had not worked, failing to wear the Class A uniform after being ordered to do so and failing to "go 1041 and 1042 after being given a direct order to do so." (Doc. # 36, Ex. G at 32).

Finley and White were also notified in their respective letters that a post disciplinary hearing would be held on November 6, 2014, at which time they could present evidence, and question witnesses. (Doc. # 36, Ex. F at 31 and Ex. G at 33).

Gallew also received a letter dated October 23, 2014 in which he was informed that his employment with the Town of Camp Hill was terminated on October 20, 2014. (Doc. # 33, Ex. F at 32, Def's Ex. 4). The allegations against him included Conduct Unbecoming an Officer for leaving a recording device in the executive session in record mode and insubordination for threatening to arrest the mayor. (*Id*.) He was notified that he could request a hearing which he did.

On November 6, 2014, the post disciplinary hearing for Finley and White was held before the Town Council. They attended the post disciplinary hearing with their attorneys. (Doc. # 33, Ex. A at 31-32, Finley Dep. at 65-66). At the beginning of the hearing, Finley and White's attorney sought to recuse Evans and two council members from participating in the hearing. (Doc. # 33, Ex. C at 5, Hr'g Tr. p. 4). According to counsel, Evans and Town Council members Carolyn Evans and Anthony Pogue were biased against his clients. (*Id*.)

11

All three declined to recuse themselves.  (Doc. # 33, Ex. C at 8, Hr'g Tr. p. 7).  Finally, counsel challenged the October 7, 2014 pre-disciplinary hearing as procedurally deficient. (*Id*. at Ex. C at 10, Hr'g Tr. p. 9).

Finley and White testified in their defense at that hearing.  (Doc. # 33, Ex. A at 33, Finley Dep. at 67).  Finley defended his actions and explained that he "tried to explain to the mayor at the last hearing."  (Doc. # 33, Ex. C at 30, Hr'g Tr. p. 29).  He conceded that Officer Greathouse was paid for hours he did not work on October 23, 2014.  (Doc. # 33, Ex. A at 36, 39, Finley Dep. at 73, 84).  But Finley argued that the officers were being paid for compensatory time or hours that they had previously worked and not been paid.  (*Id*.) Finley offered testimony regarding White's hours as well.  (Doc. # 33, Ex. C at 39-40, Hr'g Tr. p. 38-39). According to Finley, he attempted to offer the mayor "comp time logs" but Evans suggested he had created the logs.  (Doc. # 33, Ex. C at 39-41, Hr'g Tr. p. 38-40). Finley also explained that while the mayor "had indicated that he wanted officers to wear a class a uniform, but he never told me directly it applied to [him]."  (Doc. # 33, Ex. C at 34, Hr'g Tr. p. 33).  Finally, Finley explained conversations with the mayor about officers "going 1041 and 1042."  (Doc. # 33, Ex. C at 37-38, Hr'g Tr. p. 36-37).

White also testified at the post disciplinary hearing.  (Doc. # 33, Ex. C at 52, Hr'g Tr. p. 51).  He acknowledged that he was permitted to present evidence on his behalf at the October 20, 2014 pre-disciplinary hearing.

Q:     Did you present any testimony or any evidence on your behalf?

A:      I presented my side of – they're just disallowing comp time, which is time I've already earned by being here and not being paid.  And at this point, they just wanted to disallow it.  And that's how they got to me not working enough hours.

         I also advised them at that time that the mayor did not have the authority to issue orders, that it was in violation of policy, and in violation of Attorney General's opinions.  They didn't seem to care.

(Doc. # 33, Ex. C at 57-58, Hr'g Tr. p. 56-57).

White admitted on cross-examination that he did not always "go 10-41 and 10-42" and there were times he did not wear his uniform even though he was aware of the mayor's request that officers wear the uniform.  (Doc. # 33, Ex. C at 67-70, Hr'g Tr. p. 66-69).

Their attorneys were also able to question Evans and Greathouse.  (Doc. # 33, Ex. C at 72-93, Hr'g Tr. p. 71-92).  They presented documentation in support of their defense.  At the conclusion of the hearing, the Council declined to overturn their terminations.  (Doc. # 42, Ex. C at 58, Def's Ex. 7; Ex. H at 29, Def's Ex. 5).

On November 17, 2014, the Town Council held a post-termination hearing at the request of Gallew.  (Doc. # 33, Ex. F).  Gallew retained the same counsel as Finley and White, and at the beginning of his hearing, counsel again sought to recuse Evans and councilwoman Carolyn Evans from participating in the hearing.  (Doc. # 33, Ex. F at 9, Hr'g Tr. p. 8).  According to counsel, Mayor Evans and Councilwoman Evans were biased against his client.   (Doc. # 33, Ex. F at 9-10, Hr'g Tr. p. 8-9).  Both declined to recuse themselves.  (Doc. # 33, Ex. F at 11, Hr'g Tr. p. 10).

At the hearing, at the request of his attorney, the city attorney reiterated that Gallew

13

was terminated because "he had left a recording device in an executive session, which has generated an investigation by the district attorney or by the State into that recording device also."   (Doc. # 33, Ex. F at 15, Hr'g Tr. p. 14).  He was also terminated because

> upon confiscation of the recording device that was found in the building and that he admitted to having or being his, once the mayor took that into his possession and turned it over to proper authorities, your client then threatened the mayor with arrest in front of the entire people in the whole area.  He took out his handcuffs and he did not turn back over the recording device that was found in executive session, that your client admitted was owned and in his possession.  And he admitted that.  That was the reasoning for his termination.

(Doc. # 33, Ex. F at 17, Hr'g Tr. p. 16).

Gallew then called the Mayor as a witness and questioned him about the events of October 20, 2014.  (Doc. # 33, Ex. F at 18-40, Hr'g Tr. p.17-39). Gallew also testified on his own behalf.  (Doc. # 33, Ex. F at 40-53, Hr'g Tr. p. 39-52).  According to Gallew, he mistakenly left his MP3 recorder in the executive session when he left the council meeting. (Doc. # 33, Ex. F at 44-45, Hr'g Tr. p. 43-44).  At the conclusion of the hearing, Councilwoman Smith moved to uphold Gallew's termination, Councilman Hatcher seconded the motion, and the Council unanimously voted to terminate him.  (Doc. # 33, Ex. F at 55-56, Hr'g Tr. p. 54-55; Ex. O at 2, p. 2).

The plaintiffs filed this lawsuit in the Circuit Court of Tallapoosa County, Alabama on November 19, 2014.  On March 11, 2015, the plaintiffs filed a First Amended Complaint alleging violations of their federal due process rights.  (Doc. # 1 at 1-2).  The defendants removed the case to this court on March 26, 2015.  (*Id*.)

14

## IV.  DISCUSSION

### A.  The Federal Due Process Claim

The plaintiffs contend that the Town of Camp Hill deprived them of their procedural due process rights.  Specifically, the plaintiffs assert that they were terminated without being afforded a pre-deprivation hearing, that the Town of Camp Hill conducted a post-deprivation hearing without giving them *any* notice of the charges against them, and that the post-deprivation hearing was deficit and biased because the Mayor participated in the proceeding both as the complainant and as a deliberative member of the hearing body.  (Doc. # 1, Amended Comp. at 3-4).

Due process requires that "a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985), *quoting Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950).   To establish a procedural due process claim,[7] a plaintiff must demonstrate:  (1) that he was deprived of a property interest; and (2) that he did not receive sufficient process regarding that deprivation.  *Ross v. Clayton County Ga.*, 173 F.3d 1305, 1307 (11th Cir. 1999).  The parties do not dispute that Finley and White had

---

[7]  The due process clause "provides two different kinds of constitutional protection: procedural due process and substantive due process."  *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994) (*en banc*).  The Eleventh Circuit has decisively foreclosed  any substantive due process claims in the employment law context, and the plaintiffs' substantive due process claims were previously dismissed by the court.  *See McKinney, supra; see also Bussinger v. City of New Smyrna Beach, Fla.*, 50 F.3d 922, 925 (11th Cir. 1995); *Thornquest v. King*, 82 F.3d 1001, 1004 fn 3 (11th Cir. 1996); *Hollins v. Fulton Cty*, 422 Fed. Appx. 828, 833 (11th Cir. 2011).

a property interest in their continued employment but they do dispute whether Gallew had a constitutionally protected property interest in continuing his employment as a part-time officer.  However, discussion regarding the property issue is unnecessary because the court concludes that all three plaintiffs received sufficient process prior to their official discharge from employment with the Town of Camp Hill.

The essential requirements of due process are notice and an opportunity to respond. *Loudermill*, 470 U.S. at 546.  The opportunity to present reasons why a proposed action should not be taken is a fundamental due process requirement.  *Id.*  Thus, the principle of due process requires "'some kind of hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment."  *Id.*, at 542.  The hearing "should be an initial check against mistaken decisions – essentially a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action."  *Id.*

The parties do not dispute that Finley and White have constitutionally-protected interests in their positions.  It is also undisputed that, during the October 7, 2014, meetings with Evans and Pogue, Finley and White were notified that they were disciplined and being placed on administrative leave for discrepancies in payroll and failing to follow protocol. Finley and White were provided written notice of the reasons for their terminations.  In addition, they were informed of their right to a pre-termination hearing, and both plaintiffs requested a hearing.  On October 20, 2014, they were afforded a full hearing before members

16

of the Town of Camp Hill Council prior to their terminations.[8]   They were represented by

counsel and they were permitted to present and cross-examine witnesses, submit evidentiary

material and challenge the evidence presented against them.   During the hearings, Evans

explained his reasons for terminating Finley and White.   Finley and White individually

challenged Evans' reasons and defended their actions.   Finley and White both presented

witnesses and gave testimony regarding his version of the facts.   The Council found that the

decision to terminate Finley and White were justified.   After the pre-termination hearing,

Finley and White requested and received full evidentiary post-termination hearings.

> In *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84
> L.Ed.2d 494 (1985), we concluded that a public employee dismissable only for
> cause was entitled to a very limited hearing prior to his termination, to be
> followed by a more comprehensive post-termination hearing.   Stressing that
> the pretermination hearing "should be an initial check against mistaken
> decisions – essentially, a determination of whether there are reasonable
> grounds to believe that the charges against the employee are true and support
> the proposed action," *id.*, 545-546, 105 S.Ct., at 1495, we held that
> pretermination process need only include oral or written notice of the charges,
> an explanation of the employee's evidence, and an opportunity for the
> employee to tell his side of the story, *id*., at 546, 105 S.Ct., at 1495.

*Gilbert v. Homar*, 520 U.S. 924, 929 (1997).

It is undisputed that Finley and White were placed on administrative leave on October

7, 2014,  and they were not terminated until *after* the October 20, 2014 hearing.   At the

October 20, 2014 pre-termination hearings, the plaintiffs received adequate notice of the

charges, an explanation of the mayor's reasons for recommending termination, and an

---

[8]  Although Finley and White were placed on administrative leave on October 7, 2014, they were not
terminated until *after* the pre-termination hearings on October 20, 2014.

opportunity to "tell [their] side of the story." *Id.*  Because Finley and White received sufficient notice and "some kind of hearing," prior to their termination, the court concludes that Finley and White were afforded all the process that was due prior to their official termination. *See Loudermill.*, *supra.*  *See also East v. Clayton County, Ga.*, 436 F. App'x 904, 913 (11th Cir. 2011) ("It is noteworthy, it appears that [the plaintiff] likely received sufficient due process because he was only placed on unpaid administrative leave . . ., he was informed of his alleged violation, and he had several opportunities, albeit informal ones, to rebut the allegations." Therefore, the defendant's motion for summary judgment with respect to Finley and White's federal procedural due process claims is due to be granted.

With respect to Gallew, it is undisputed that Evans summarily terminated him on October 20, 2014.  Nonetheless, his federal due process claim fails because he was afforded a full post-termination evidentiary hearing.   "[T]he Supreme Court has "rejected the proposition that 'at a meaningful time and in a meaningful manner' *always* requires the State to provide a hearing prior to the initial deprivation of property." *Reams v. Irvin*, 561 F.3d 1258, 1263 (11th Cir. 2009) *quoting Parratt v. Taylor*, 451 U.S. 527. 540-41 (1981). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Gilbert*, 520 U.S. at 930 *quoting Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). In determining whether a pre-termination hearing was required, the court looks to the factors enumerated in *Mathews v. Eldridge*, 424 U.S. 319 (1976).

> Under *Mathews*, the specific dictates of due process in any given case are determined by considering: (1) the private interest that will be affected by the

18

> official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, "including the function involved and the fiscal and administrative burdens that the additional and substitute procedural requirement would entail." 424 U.S. at 335, 96 S.Ct. at 903.

*Reams*, 561 F.3d at 1263-64. *See also Grayden v. Rhodes*, 345 F.3d 1225, 1233 (11th Cir. 2003)

Gallew's interest in his continued employment is not insignificant. However, in contrast, the risk of an erroneous deprivation was low in light of the undisputed facts of what occurred on October 20, 2014 between Gallew and the mayor. The State's interest in preventing individuals from recording executive sessions is substantial as is the authority of superior officers which would be compromised if subordinate officers were permitted to threaten superior officers. Finally, Gallew was afforded a full, post-termination deprivation hearing. Thus, the court concludes that in balancing the competing interests in this case, a pre-termination hearing was not mandated by the Due Process Clause.

More importantly, with respect to all three plaintiffs, their federal due process claims fail because the State of Alabama provides an adequate post-deprivation remedy. "When determining if a plaintiff has stated a valid procedural due process claim – look to whether the available state procedures were adequate to correct the alleged procedural deficiencies." *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000). "[T]o be adequate, the state procedure need not provide all the relief available under section 1983." *Id*. Alabama state courts "review employment termination proceedings both to determine whether they are

19

supported by substantial evidence and to see that the proceedings comport with procedural

due process." *See Bell v. City of Demopolis,* 86 F.3d 191, 192 (11th Cir.1996).

> To state a claim under 42 U.S.C. § 1983 for denial of procedural due process,
> an individual must show "the state refuse[d] to provide a process sufficient to
> remedy the procedural deprivation." *Cotton v. Jackson*, 216 F.3d 1328, 1330-
> 31 (11th Cir. 2000) (quotations omitted). "This rule ... recognizes that the state
> must have the opportunity to remedy the procedural failings of its subdivisions
> and agencies in the appropriate failings of its review boards, and state courts
> before being subjected to a claim alleging a procedural due process violation."
> *Id* at 1331 (quotation omitted).

*East v. Clayton Cty, Ga.*, 436 F. App' x 904, 912-13 (11th Cir. 2011).

Thus, a sufficient state remedy is available.   This court therefore concludes that

summary judgment should be granted in favor of the Town of Camp Hill on the plaintiffs'

procedural due process claims.

## B.  The State Law Claims

The court's exercise of supplemental jurisdiction over the remaining state law claims

is discretionary.    Under 28 U.S.C. § 1367(c)(3), the court may "decline to exercise

supplemental jurisdiction over a [state law] claim if the district court has dismissed all claims

over which it has original jurisdiction  . . . "  Under certain circumstances, the court may

remand supplemental state law claims to state court.  Although a remand of supplemental

state law claims is not encompassed within the two express provisions for remand in the

removal statutes, *see* 28 U.S.C. §§ 1441(c), 1447(c), the court has inherent authority to

remand the state law claims.  *Cf. Snapper v. Redan*, 171 F.3d 1249, 1263 n. 26 (11th Cir.

1999) (acknowledging the district court's "inherent power to remand a removed case when

20

appropriate to enforce a forum selection clause"), *citing Carnegie-Mellon Univ. v. Cohill*, 484 U.S. at 354 (holding that Congressional "silence cannot sensibly be read to negate the power to remand").  The discretion to remand supplemental state law claims "'enables district courts to deal with cases involving [state law] claims in the manner that best serves the principles of economy, convenience, fairness and comity. . . .'" *Snapper, supra* (quoting *Carnegie-Mellon*, 484 U.S. at 357).  "In making that determination, the judge should 'take into account concerns of comity, judicial economy, convenience, fairness, and the like.'" *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1267 (11th Cir. 2001).  A remand of the state law issues to the Tallapoosa County Circuit Court will enable the plaintiffs to pursue their state law claims in state court.  *See Hardy v. Birmingham Bd. of Educ.*, 954 F.2d 1546, 1553 (11th Cir. 1992) (allowing remand of state law issues to state court in order to enable appellant to avoid the statute of limitations).

The court thus declines to exercise supplemental jurisdiction over the plaintiffs' state law claims.  Upon consideration of the principles of judicial economy, convenience, fairness, and comity, the court concludes that the state law claims are due to be remanded to the Chambers County Circuit Court.  *See Lewis*, *supra*. (If the district court does decline to exercise supplemental jurisdiction, these claims should be remanded to state court, rather than dismissed, because this case was originally filed in state court and removed to federal court pursuant to 28 U.S.C. §1441.").

21

# V.  CONCLUSION

Accordingly, it be and is hereby ORDERED that:

1.      The plaintiffs' motion for partial summary judgment (doc. # 34) be and is hereby DENIED with respect to count three.

2.      The defendant's motion for summary judgment (doc. # 31) with respect to the federal due process claims be GRANTED in favor of the Town of Camp Hill.

3.      The federal due process claims be DISMISSED with prejudice.

4.      The state law claims be REMANDED to the Tallapoosa County Circuit Court. The Clerk of the Court be and is hereby DIRECTED to take the action necessary to accomplish the remand of this case to the Circuit Court of Tallapoosa County.

Done this 11th day of February, 2016.


                        /s/Charles S. Coody
                        CHARLES S. COODY
                        UNITED STATES MAGISTRATE JUDGE

22